**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Olen Properties Corporation, *et al.*, | No. CV-24-02423-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Jefferson at One Scottsdale I LP, *et al.*, | |
| Defendants. | |

At issue is Plaintiffs' Motion to Remand (Doc. 9, Mot.), to which Defendant Uponor Inc. (Uponor) filed a Response (Doc. 15, Resp.) and Plaintiffs filed a Reply (Doc. 16, Reply). For the following reasons, the Court grants Plaintiffs' Motion.

**I.    BACKGROUND**

One North Scottsdale (the Apartments) is a multifamily apartment complex in Scottsdale, Arizona, managed by Plaintiff Olen Properties Corp., a Florida corporation, and owned by Plaintiff One North Scottsdale Corp., an Arizona corporation. Defendant JPI Construction, LLC (JPI), a general contractor based in Texas, allegedly completed construction on the Apartments in July 2014. In early 2022, Plaintiffs discovered that the Apartments suffered from widespread leaks in PEX pipe and plumbing components allegedly manufactured by Defendant Uponor, Inc., an Illinois corporation.

Plaintiffs originally filed suit in Maricopa County Superior Court on January 20, 2023. (Mot. at 2.) Plaintiffs' first amended complaint, filed on April 14, 2023, alleges claims of negligence, negligent misrepresentation, strict products liability, and breaches of

express and implied warranties. (Mot. at 3.) On May 19, 2023, Uponor filed a notice of removal to the U.S. District Court for the District of Arizona, which had diversity jurisdiction under 28 U.S.C. § 1332(a).

Shortly thereafter, the parties agreed to early mediation and jointly stipulated to stay litigation until October 4, 2023. (Mot. at 3.) On September 22, 2023, Plaintiffs learned through mediation that JPI was not physically involved in the construction of the Apartments and that JPI had subcontracted the plumbing work to Danco Plumbing, Inc. (Danco), an Arizona corporation. (Doc. 1, Ex. C. at 2.) Plaintiffs subsequently dismissed JPI on October 5, 2023. After consulting with one of their experts, Scott Freisen, who determined that the plumbing installation could have contributed to the leaks, Plaintiffs filed a second amended complaint (SAC) on November 10, 2023 naming Danco as a defendant. (Mot. at 4.) Because complete diversity no longer existed between the parties, the case was remanded back to Maricopa County Superior Court on December 1, 2023.

After being served on December 27, 2023, Danco filed a notice of appearance on February 26, 2024. Over the following months, Plaintiffs "worked with Danco's counsel to determine [that] Uponor had trained its installers in accordance with the requirements of Uponor's warranty." (Mot. at 6.) During this period, ongoing testing by Plaintiffs' experts also suggested that the PEX pipes were "inherently defective and would fail regardless of the installation performed by Danco." (Reply at 2.) Based on these findings, "Plaintiffs determined that the claims against Danco were of minor significance compared to the claims against Uponor" and that "the claims would add unnecessary cost and complexity to the case." (Reply at 3.) Plaintiffs thus dismissed Danco on September 5, 2024; and, as diversity was now reestablished, Uponor removed the case back to the U.S. District Court for the District of Arizona on September 13, 2024. (Doc. 1, Notice of Removal.)

On October 11, 2024, Plaintiffs filed the present Motion to Remand, arguing that Uponor's removal is untimely under 28 U.S.C. § 1446(c), which prohibits removal based on diversity jurisdiction more than one year after the action commenced unless the district court finds that Plaintiffs acted in bad faith. (Mot. at 5.) Uponor asserts that Plaintiffs did,

in fact, act in bad faith, alleging that Danco "was not named as a Defendant in good faith or based upon Plaintiffs' information and belief that the alleged leaks could have been the result of faulty installation." (Resp. at 1.)

## II. LEGAL STANDARD

Federal courts may exercise removal jurisdiction over a case only if subject matter jurisdiction exists. 28 U.S.C. § 1441(a); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). Federal courts have diversity jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). It is a "longstanding, near-canonical rule that the burden on removal rests with the removing defendant." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). Furthermore, "[courts] strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). When a defendant seeks to remove a case based on diversity jurisdiction more than one year after the action commenced, a court must find "that the plaintiff has acted in bad faith in order to prevent [the] defendant from removing the action." 28 U.S.C. § 1446(c).

## III. ANALYSIS

The parties do not dispute that there is complete diversity of citizenship, that the amount in controversy exceeds $75,000, or that the removal of this action occurred more than one year after it commenced. Therefore, the Court must remand this case unless it finds that Plaintiff acted in bad faith by naming and later dismissing Danco.

The Ninth Circuit has offered little guidance for evaluating the bad faith exception under § 1446(c). However, "district courts in the Ninth Circuit have stated that 'defendants face a high burden to demonstrate that a plaintiff acted in bad faith to prevent removal.'" *Kolova v. Allstate Ins. Co.*, 438 F. Supp. 3d 1192, 1196 (W.D. Wash. 2020) (quoting *Heacock v. Rolling Frito-Lay Sales, LP*, No. C16-0829JCC, 2016 WL 4009849, at *3 (W.D. Wash. July 27, 2016)). Thus, "district courts apply a 'strict standard' and find 'bad faith when a plaintiff fail[s] to actively litigate a claim against a defendant in any

capacity.'" *Id.* (quoting *Heacock*, 2016 WL 4009849, at *3) (alteration in original); *see also Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1277 (D.N.M. 2014) (requiring a defendant to show "strong, unambiguous evidence of the plaintiff's subjective intent" or, alternatively, "that the plaintiff . . . engaged in a mere scintilla of litigation against the removal spoiler").

In the Ninth Circuit, "courts often consider three factors when evaluating bad faith under 28 U.S.C. § 1446(c)(1): '[t]he timing of naming a non-diverse defendant, the timing of dismissal, and the explanation given for that dismissal.'" *Kolova*, 438 F. Supp. 3d at 1196–97 (quoting *Heacock*, 2016 WL 4009849, at *3) (alteration in original); *see also Kalfsbeek Charter v. FCA US, LLC*, 540 F. Supp. 3d 939, 943 (C.D. Cal. 2021) ("[C]ourts have considered the timing of naming and dismissing the non-diverse defendant, the explanation given for dismissal, and whether the plaintiff actively litigated the case in 'any capacity' against a non-diverse defendant before dismissal." (quoting *Torres v. Honeywell, Inc.*, No. 2:20-CV-10879-RGK-KS, 2021 WL 259439, at *3 (C.D. Cal. Jan. 25, 2021))).

First, the timing of naming Danco does not clearly weigh for or against a finding of bad faith. Courts have held that a plaintiff did not act in bad faith by naming non-diverse defendants in the original complaint and serving them within forty-five days. *See Manious v. R.J. Reynolds Tobacco Co.*, 720 F. Supp. 3d 952, 960–61 (D. Haw. 2024). However, a plaintiff may act in bad faith by naming non-diverse defendants shortly after removal and failing to serve them within the one-year limitation period. *See Heller v. Am. States Ins. Co.*, No. CV 15-09771 DMG, 2016 WL 1170891, at *3 (C.D. Cal. Mar. 25, 2016).

Here, Plaintiffs did not name Danco in the initial complaint, but neither could they have been expected to. Defendant does not dispute that Plaintiffs first learned of Danco through mediation on September 22, 2023, notified the court of their intention to join Danco on October 19, 2023, and filed the SAC naming Danco on November 9, 2023, nearly six months after Defendants first removed the case from state court. Although Defendant stresses that "one and a half months" elapsed between the September mediation and the filing of the SAC, (Resp. at 5), such delay does not appear inherently unreasonable. Further,

Plaintiff promptly served Danco within one month of remanding the case to state court and nearly one month before the one-year limitation period expired. Although Plaintiffs named Danco almost ten months after commencing the action, this timing does not clearly suggest that Danco was named simply to defeat diversity and run out the clock for future removal, rather than in response to Plaintiffs' discovering Danco's identity and potential liability.

Second, the timing of Danco's dismissal does not support a finding of bad faith. Courts are more likely to find a plaintiff acted in bad faith when dismissing the non-diverse defendant shortly after the one-year limitation expires, *see NKD Diversified Enters., Inc. v. First Mercury Ins. Co.*, No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *4 (E.D. Cal. Apr. 28, 2014), rather than well after the limitation period lapses, *see Kolova*, 438 F. Supp. 3d at 1197 (noting that "nearly six months" had passed between the removal deadline and the dismissal of the non-diverse defendants).

Here, Plaintiffs dismissed Danco on September 5, 2024, nearly nine months after the one-year removal limitation had lapsed. Although it is possible that Plaintiffs simply delayed this dismissal to bolster their later argument against removal, taken alone, this timing clearly weighs against a finding of bad faith.

Lastly, Plaintiffs' explanations for naming and dismissing Danco do not suggest that they named Danco simply to defeat diversity. A plaintiff's failure to actively litigate a case against the non-diverse defendant could suggest that there was no valid reason for naming and dismissing that defendant. *See Aguayo*, 59 F. Supp. 3d at 1263. However, a finding of bad faith is not supported if a plaintiff had a "legitimate basis for believing it had a valid claim" against the non-diverse defendant and "offered a reasonable explanation for dismissing" the non-diverse defendant. *See Kalfsbeek Charter*, 540 F. Supp. 3d at 946.

Here, Plaintiffs allege to have believed they had valid claims against Danco for negligence, negligent misrepresentation, and breaches of implied and express warranties.[1]

---

[1] Whether Plaintiffs *in fact* had valid claims against Danco is not at issue. Defendants do not argue that these claims were invalid, but rather that Plaintiffs asserted the claims only to defeat diversity and keep the case in state court. (*See* Resp. at 4.) But Plaintiffs cite authority suggesting they had a legitimate basis to believe they had valid claims against a subcontractor for construction defects. (*See* Reply at 7.)

(Doc. 1, Ex. E at 8–16.) In his declaration dated October 10, 2024, one of Plaintiffs' experts, J. Scott Friesen, noted that after he first inspected the plumbing system at the Apartments in August 2023, he "suspected that the mode of failure causing the multiple leaks . . . could either be defective Uponor PEX products, installation deficiencies by the plumber[,] or both." (Mot., Ex. B ¶ 4.) Defendant argues that Plaintiffs could not "hold a good faith belief that installation of the PEX by Danco caused the alleged plumbing leaks" because "Plaintiffs' experts rendered their opinions that the PEX was 'defectively manufactured' *before* the parties participated in mediation on September 22, 2023." (Resp. at 5.) But these theories—defective manufacture and defective installation—are not mutually exclusive.[2] As Mr. Friesen noted in his declaration, he suspected at the time that both manufacture and installation could have contributed to the PEX failures, and his opinion is sufficient to support Plaintiffs' reasonable belief.

Plaintiffs also offer a reasonable explanation for dismissing Danco: namely, that after ongoing inspection and informal discovery, Plaintiffs "determined that the claims against Danco were of minor significance compared to the claims against Uponor, proving the claims would add unnecessary cost and complexity to the case." (Reply at 3.) In his declaration, Mr. Friesen noted that after continued inspection and review of "samples, documents[,] and reports . . . regarding the Uponor PEX pipe failures at the [Apartments] and throughout the country," he is "now of the opinion that the mode of failure . . . is entirely a result of deficiency in the manufacturer [sic] and design of the Uponor PEX product." (Mot., Ex. B ¶ 9.) Additionally, Plaintiffs learned through communications with Danco "that Danco's installers were trained by Uponor in the use of its products," suggesting that faulty installation was not a likely cause of the PEX failures. (Reply at 3.) Given their expert's evolving opinion and information gathered from Danco's counsel,

---

[2] Defendant appears to rely on the declaration of Plaintiffs' other expert, Dr. Ahamed Shabeer, who seemingly did not share Mr. Friesen's suspicion that defective installation may have also contributed to the PEX pipe leaks. (Mot., Ex. C at 2.) Although it is unclear from Dr. Shabeer's declaration when he arrived at this conclusion, it is not inherently unreasonable for Plaintiffs to rely on one expert's opinion over another.

- 6 -

Plaintiffs allegedly dismissed Danco to "maximiz[e] the Plaintiffs' recovery and minimize[e] the costs of litigation." (Reply at 3.)

Defendant contends that Plaintiffs' explanations for naming and dismissing Danco are mere pretext because "in the 10 months between the filing of the SAC . . . and Plaintiffs' voluntary dismissal of Danco," Plaintiffs did not "take any action to compel a responsive pleading from Danco" and "performed no discovery into any of the four (4) causes of action they asserted against Danco." (Resp. at 3–4.) Defendant thus argues that Plaintiffs failed to "actively litigate" against Danco and acted in bad faith. This argument is unpersuasive, as courts take an "expansive view of active litigation":

> [T]he plaintiff need not expect to recover damages from the removal-spoiling defendant; if the plaintiff keeps the removal spoiler joined to obtain discovery from him or her, to force a settlement, to pressure the removal spoiler to testify on the plaintiff's behalf against other defendants, or to obtain a judgment against the removal spoiler that the plaintiff knows the removal spoiler cannot pay, [courts] will consider the plaintiff to have actively litigated against the removal spoiler, and unless the removing defendant can adduce other evidence of bad faith, such as communications from the plaintiff directly attesting to bad faith, [courts] will presume good faith and remand the case.

*Aguayo*, 59 F. Supp. 3d at 1229. Even though Plaintiffs did not compel a responsive pleading or conduct formal discovery against Danco during the six months between Danco's appearance and dismissal, the informal discovery communications with Danco's counsel were certainly more than the "mere scintilla of litigation" that would have indicated bad faith.[3] *See id.* at 1277; *see also Stroman v. State Farm Fire & Cas. Co.*, No. C18-1297 RAJ, 2019 WL 1760588, at *2 (W.D. Wash. Apr. 22, 2019) (seeking "additional information . . . through indirect discovery" was indicative of "active litigation").

---

[3] Plaintiffs also argue that Danco did not appear in the case until after "the deadline to remove the case . . . had already passed, so whether Plaintiffs did or did not actively litigate against Danco is irrelevant—it was already too late to remove the case." (Reply at 5.) But whether or not Plaintiffs actively litigated against Danco is, in fact, relevant, as it might suggest whether Plaintiffs had some non-dilatory motive in naming and dismissing Danco.

- 7 -

Indeed, an email from Plaintiffs' counsel dated March 14, 2024—nearly three months after the one-year limitation on removal had expired—shows that Plaintiffs were actively seeking to verify whether Danco had been certified and trained by Uponor to install its PEX products. (Reply, Ex. B at 1.) For the Court to find that Plaintiffs acted in bad faith, it would have to find that this email was a mere ruse intended to obfuscate Plaintiffs' true motivation to name Danco solely to defeat diversity jurisdiction. But Defendant has not proffered evidence—let alone "strong, unambiguous evidence"—suggesting such intent. *See Aguayo*, 59 F. Supp. 3d at 1277. Given Defendant's heavy burden to show bad faith, the Court cannot make such a finding on speculation alone.

Considering these factors together, the Court does not find that Plaintiffs acted in bad faith by naming and later dismissing Danco. Although the timing of naming Danco might support a finding of bad faith, the other factors weigh against this. The timing of Danco's dismissal long after the limitation period ended; Plaintiffs' valid claims against Danco; and Plaintiffs' reasonable explanation for dismissing Danco all suggest that Plaintiffs did not name a non-diverse defendant simply to prevent removal of this case.

## IV. CONCLUSION

For the reasons set forth *supra*, the Court finds that Defendant has failed to show Plaintiffs acted in bad faith, and Defendant's removal is thus untimely under 28 U.S.C. § 1446(c).

**IT IS THEREFORE ORDERED** granting Plaintiffs' Motion to Remand. (Doc. 9).

**IT IS FURTHER ORDERED** directing the Clerk of Court to remand this matter to Maricopa County Superior Court without delay.

**IT IS FURTHER ORDERED** vacating the Rule 16 Scheduling Conference set for February 20, 2025 at 10 AM (Doc. 14).

Dated this 20th day of November, 2024.

Honorable John J. Tuchi
United States District Judge